[No. 56584–8.   En Banc.   May 24, 1990.]

*In the Matter of the Marriage of* JUDITH ANN
(GRIFFIN) BOOTH, *Respondent, and* GENE
ROSS GRIFFIN, *Appellant.*

*Cowan, Walker, Jonson, Moore & Nickola,* by *P. Craig Walker,* for appellant.

*Timothy W. Mahoney,* for respondent.

DOLLIVER, J.—Gene Ross Griffin appeals the modification of an original decree of dissolution. The modification adjusted child support to comply with the Washington State Child Support Schedule, which took effect in July 1988.

A decree of dissolution of marriage was entered on July 19, 1982, dissolving the marriage of Gene and Judith Griffin (now Judith Booth). The decree awarded Mrs. Booth the custody of the two minor children and required Mr. Griffin to pay $280 per month of child support. In 1987 Mr. Griffin voluntarily increased his monthly child support payments to $403. On July 21, 1988, Mrs. Booth filed a petition for modification of the decree under RCW 26.09.170(4). She sought an increased amount of child support based on the Washington State Child Support Schedule Comm'n, Washington State Child Support Schedule (July 1988) (Support Schedule); an order granting her the children's tax exemption; health coverage for the children under Mr. Griffin's policy (this request was subsequently withdrawn); and attorney fees. In response, Mr. Griffin submitted an affidavit indicating his willingness to increase his support payment. He disagreed with the amount of increase and submitted to the court five reasons he felt warranted a deviation from the presumptive amount set forth in the schedule. These reasons were: (a) Mrs. Booth's current unemployment; (b) direct expenditures to children; (c) the remarriage of both parties; (d) the award of the couple's

home to Mrs. Booth, thereby saving her housing expenses; and (e) the magnitude of the adjustment from $403 to $848.

The trial court rejected the argument for deviation, stating in its oral opinion:

> And as I read the statute and the guidelines, I don't have any jurisdiction or any authority to do anything but fix the support at guidelines.
>
> . . . .
>
> I'm saying I do not think I can exercise my discretion to lower child support because of high income. . . . If I were exercising my discretion that way I might say, "Well, here's two families that make $91,000 total. This is not enough." I just don't think I can exercise my discretion downward.

On September 22, 1989, the trial court entered its order amending the decree. The relevant portions were as follows:

> (1) Under the State Child support guidelines effective July 1, 1988, this Court has no discretion to make a downward adjustment from scheduled support *based upon the resources available to Petitioner by virtue of her second marriage, or any of the other circumstances outlined in Respondent's affidavit*;
>
> (2) Child support shall be modified to comply with the guidelines established and adopted in the State of Washington and that such amount shall be Four Hundred Twenty Four and no/100 Dollars ($424.00) per month per child starting September 1, 1988.

(Italics ours.)

The trial court also denied attorney fees. Mr. Griffin sought review before the Court of Appeals of the trial court's ruling that it could not deviate from the guidelines based upon the information provided to it in his affidavit. The case was transferred to this court.

Three issues confront us in this case. (1) Under the statute does the trial court have discretion to deviate from the Support Schedule guidelines; (2) was the trial court aware it had the power to deviate from the guidelines; and (3) if the trial court was aware of its power to deviate, were the reasons given by Mr. Griffin adequate?

In considering the first issue we must first examine the statutes dealing with child support which are critical to this case. RCW 26.09.100 authorizes the court to order either or both parents owing a duty of support to any child of the

marriage to pay an amount determined pursuant to the schedule adopted under RCW 26.19.040. RCW 26.19.001 explains the Legislature's intent in establishing a statewide child support schedule:

The legislature intends, in establishing a child support schedule, to insure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living. The legislature also intends that the child support obligation should be equitably apportioned between the parents.

On July 1, 1988, RCW 26.19.020 read as follows:

(1)(a) Except as provided in (b) of this subsection, in any proceeding under this title or Title 13 or 74 RCW in which child support is at issue, *support shall be determined and ordered according to the child support schedule adopted pursuant to RCW 26.19.040.*

. . . .
(2) An order for child support shall be supported by written findings of fact upon which the support determination is based.

. . . .
(5) *Unless* specific reasons for deviation are set forth in the written findings of fact or order and are supported by the evidence, the court or administrative law judge *shall* order each parent to pay the amount of child support determined using the standard calculation.

(6) The court or administrative law judge shall review the worksheets and the order for adequacy of the reasons set forth for any deviation and for the adequacy of the amount of support ordered. Each order shall state the amount of child support calculated using the standard calculation and the amount of child support actually ordered. *Reasons that may support a deviation from the standard calculation include: Possession of wealth, shared living arrangements, extraordinary debts that have not been voluntarily incurred, extraordinarily high income of a child, a significant disparity of the living costs of the parents due to conditions beyond their control, and special needs of disabled children.* A deviation may be supported by tax planning considerations only if the child would not receive a lesser economic benefit. Agreement of the parties, by itself, is not adequate reason for deviation.

(Italics ours.) (In 1989, the Legislature eliminated the term "administrative law judge" from RCW 26.19.020 and substituted the term "the presiding or reviewing officer". *See*

Laws of 1989, ch. 175, § 76, p. 816. RCW 26.19.020 was significantly amended in the 1990 session. *See* Laws of 1990, 1st Ex. Sess., ch. 2, § 19, p. 1754 (effective June 7, 1990). Neither of these amendments, however, affect the outcome of this case.)

These reasons for deviation are also included in the "Standards for the Determination of Child Support and Use of the Schedule", which are made part of the schedule. See Support Schedule, at 3. As evidenced by the word "include" in the statute, the reasons given for deviation from the standard calculation in former RCW 26.19.020(6) are not exclusive.

■ From reading the plain language of the statute, it is apparent the Legislature intended to allow judicial discretion in appropriate circumstances when calculating child support payments under the schedule.

Case law prior to the enactment of RCW 26.19 also supports a trial court's use of discretion when setting child support. In considering appeals regarding the setting of child support we have relied on the rule that trial court decisions in dissolution proceedings will seldom be changed on appeal. The spouse who challenges such decisions must show the trial court manifestly abused its discretion. When there is no abuse of discretion, we have upheld the trial court. *In re Marriage of Landry,* 103 Wn.2d 807, 699 P.2d 214 (1985). Where there has been an abuse of discretion, we have so held. *Lambert v. Lambert,* 66 Wn.2d 503, 403 P.2d 664 (1965). We hold the trial court had authority to deviate from the schedule.

Next we consider whether the trial court was aware it could deviate from the schedule when reasons for deviation exist. On this issue, we find the record is sparse and unclear. In its order amending the decree, the trial court stated it had no discretion to make a downward adjustment from the Support Schedule "based upon the resources available to Petitioner by virtue of her second marriage, or any of the other circumstances outlined in Respondent's

affidavit." When asked by counsel whether he had any discretion, the trial judge replied, "I'm saying I do not think I can exercise my discretion to lower child support because of high income." Even given the paucity and ambiguity of the record we are persuaded, nevertheless, from the record that the trial court was aware it could deviate from the schedule. The language of former RCW 26.19.020 is clear and specific in allowing a deviation from the standard schedule if the "specific reasons for deviation are set forth in the written findings of fact or order and are supported by the evidence". Certainly, the trial court in its oral opinion expressed reservations about the new statute. This was, however, an experienced trial judge, and given the clarity of the statute we have no doubt he understood his authority, under the proper circumstances, to deviate from the standard schedule even though he refused to do so in this instance.

■ Finally, we must determine whether the reasons given by Mr. Griffin in his affidavit were adequate under former RCW 26.19.020(5) and (6) to warrant deviation. At the outset, we note the trial court made no specific findings of fact regarding any of the five reasons Mr. Griffin provided. The lack of specific findings of fact is not fatal, however. In the absence of a written finding on a particular issue, an appellate court may look to the oral opinion to determine the basis for the trial court's resolution of the issue. *Goodman v. Darden, Doman & Stafford Assocs.,* 100 Wn.2d 476, 670 P.2d 648 (1983).

Based upon the trial court's oral opinion and its order amending the decree, we find the court did consider the reasons given for deviation in Mr. Griffin's affidavit when it decided not to deviate from the Support Schedule.

The first reason given in the affidavit is Mrs. Booth's unemployment. Standard 15 of the guidelines states that "[w]age income shall be imputed for parents who are voluntarily unemployed or voluntarily underemployed." State Register 88–11–004 (1988), Support Schedule, at 4. There is

no evidence in the record that her unemployment was voluntary and, thus, it was reasonable for the trial court to conclude her unemployment was not voluntary.

The second reason given is the direct expenditures paid by Mr. Griffin for the children. Standard 10 of the guidelines provides as follows:

> Basic child support shall be allocated between the parents when a child stays overnight with the parent over twenty–five percent (25%) of the year.

Support Schedule, at 4. From this standard, it appears that a legislative decision was made to disallow a reduction in the presumptive level of support based upon overnight stays which amounted to less than 25 percent. The overnight stays of the children with Mr. Griffin were less than 25 percent of the time.

The third reason given is the additional income available to both parties as a result of their remarriage. The court specifically addressed the issue of increased resources resulting from remarriage. It stated that while this might be reason for increasing the level beyond the presumptive level set by the guidelines, it was not a reason to decrease the level of support.

The fourth reason given is the more favorable living arrangements enjoyed by Mrs. Booth due to the property awarded her in the original dissolution decree. Standard 12 of the guidelines lists among the reasons for deviation "a significant disparity in the living costs of the parents due to conditions beyond their control . . .". Support Schedule, at 4. The award of the home to Mrs. Booth was not something beyond the control of the parties but rather was a part of their divorce decree.

■ The fifth reason given was the magnitude of the increase. The amount, $848, is significant and may well place a burden on Mr. Griffin. However, in adopting the schedule the Legislature considered the needs of the child as well as the equity that should exist between the parents. In the introduction to the Support Schedule, the Commission states:

The 1988 Legislature adopted SHB 1465 which established a statewide Child Support Schedule. The intention was to insure child support orders would be adequate to meet a child's basic needs and to provide additional support commensurate with the parents' income, resources and standard of living. It was also intended that child support obligations be equitably apportioned between the parents.

Support Schedule, at 1. Thus, while it is apparent the Legislature recognized the need for equity in applying the schedule, its primary concern appears to have been the adequacy of child support.

In reviewing these reasons given by Mr. Griffin and the decision made by the trial court to deny deviation from the Support Schedule, we are unable to find an abuse of discretion. As we stated in *Landry*:

We once again repeat the rule that trial court decisions in a dissolution action will seldom be changed upon appeal. Such decisions are difficult at best. Appellate courts should not encourage appeals by tinkering with them. The emotional and financial interests affected by such decisions are best served by finality.

*Landry,* at 809. A reviewing court must defer to the sound discretion of the trial court unless that discretion has been exercised in an untenable or manifestly unreasonable way. This is not the case here.

We find that the trial court did review the affidavit presented to it by Mr. Griffin, understood it had the power under the statute to deviate from the support standards, but concluded that sufficient reasons for it to deviate did not exist.

Mrs. Booth claims she is entitled to attorney fees in this matter. This claim was denied by the trial court. RCW 26.09.140 provides that a court may award attorney fees to a party after considering the financial resources of both parties and that an appellate court may order a party to pay for the cost to the other party of maintaining the appeal and attorney fees in addition to statutory costs.

In awarding attorney fees on appeal, the court should examine the arguable merit of the issues on appeal and the financial resources of the respective parties. *In re*

*Marriage of Fernau,* 39 Wn. App. 695, 694 P.2d 1092 (1984). The issues here were not frivolous and had arguable merit. Mr. Griffin and his wife earn $54,200 net income. It appears from the record that Mrs. Booth and her husband earn approximately $30,000 net income. Considering the financial resources of the parties, both are financially able to pay their attorneys and it would be a hardship to neither to do so. The trial court did not abuse its discretion and properly denied the request for attorney fees.

Affirmed.

CALLOW, C.J., and UTTER, DORE, and SMITH, JJ., concur.

DURHAM, J. (concurring in part, dissenting in part)—The majority correctly interprets the child support guidelines to allow trial courts the discretion to deviate from the schedule. However, the majority's conclusion that the trial judge actually exercised that discretion in this case is wrong. Rather than affirm, I would remand for the trial court to reconsider its ruling in light of our opinion.

The entire record in this case consists of a 3–page transcript of oral argument and a 4–sentence Order Amending Decree (both attached in full as an appendix). At the hearing, the trial judge began by stating:

> [A]s I read the statute and the guidelines, I don't have any jurisdiction or any authority to do anything but fix the support at guidelines.

Agreed Report of Proceedings, at 2.

The judge then engages in a short discussion as to why the lack of discretionary leeway is unfair to trial courts. Agreed Report of Proceedings, at 3–4. The following colloquy then ensues:

> [COUNSEL]: You're saying there is no discretion in this particular standard?
> THE COURT: . . . I just don't think I can exercise my discretion downward.

Agreed Report of Proceedings, at 4.

The trial court's written order is, if anything, even more clear. Paragraph (1) states:

Under the State Child Support guidelines effective July 1, 1988, *this Court has no discretion* to make a downward adjustment from scheduled support based upon the resources available to Petitioner by virtue of her second marriage, or any of the other circumstances outlined in Respondent's affidavit[.]

(Italics mine.) Clerk's Papers, at 2–3.

The majority gives two reasons why we should ignore this information. First, the majority finds the statute "clear and specific", implying that the trial judge must have also. Majority, at 777. It is only fair, however, to note that we arrived at our conclusion after lengthy briefs from the parties, additional research from our staff, and discussion among ourselves. Here is what the trial judge thought about the clarity of the statute:

THE COURT: I don't think anybody knows what the rule is. . . .

Agreed Report of Proceedings, at 2–3.

Second, the majority notes that the trial judge is experienced and:

given the clarity of the statute we have no doubt he understood his authority, under the proper circumstances, to deviate from the standard schedule even though he refused to do so in this instance.

Majority, at 777. I have not known many experienced trial judges—certainly none as able as Judge Day—who say one thing on the record when they "understand" the opposite to be true. What sort of precedent does this set? Are the plain–worded rulings of trial judges to be contorted, ignored, and psychoanalyzed to fit our results?

Given this record, I am at a loss to understand the majority's reluctance to remand. Although there are no Washington cases directly on point, the law appears to be clear. Failure to exercise discretion because of an erroneous view that the trial court does not have discretion requires the case to be remanded. *Personalized Mktg. Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447, 450 (Minn. Ct. App. 1989).[1]

---

[1]*See also Lemons v. Old Hickory Coun., Boy Scouts of Am., Inc.*, 322 N.C. 271, 277, 367 S.E.2d 655 (1988) ("When a trial court has failed to exercise its discretion regarding a discretionary matter and has ruled on it under the mistaken

It does not matter that the trial court's result could have been achieved upon the exercise of the withheld discretion. *Sullivan v. Chicago & Northwestern Transp. Co.,* 326 N.W.2d 320, 328 (Iowa 1982). In this case, the trial judge believed he had no discretion to deviate from the child support standards and ruled accordingly. Consequently, this case should be remanded for the trial judge to determine whether, exercising his discretion, a deviation from the child support standards is appropriate.

As to the other issues resolved in the majority opinion, I concur.

BRACHTENBACH, ANDERSEN, and GUY, JJ., concur with DURHAM, J.

---

impression it is required to rule a particular way as a matter of law, its holding must be reversed and the matter remanded for the trial court to exercise its discretion."); 5 Am. Jur. 2d *Appeal and Error* § 773 ("[W]here discretionary power existed in the court below to grant or deny a motion, which it denied on the erroneous assumption that it had no such power, its decision may be reversed and the case remanded to it in order that it may exercise its discretionary power.").

APPENDIX

September 15, 1988

Kennewick, WA

PROCEEDINGS

THE COURT:   I think all I can do is tell you what the figures are, not what they should be; but what you should compute.  And as I read the statute and the guidelines, I don't have any jurisdiction or any authority to do anything but fix the support at guidelines.  The only alternative of doing that is where they make more than $25,000, it can be reduced, but that's a strange situation in real analysis. Philosophically, it's strange that you can't make any adjustment for poor people but you can for rich people.  And I'm not saying that somebody who makes more than $25,000 is rich; but just categorically use his income, $2100 or is it $2500? This shows $2600 a month, and that would be $523 per child. I haven't computed percentage, but he should pay that percentage of $523.

MR. WALKER:   You Honor, for the record, is it your understanding then that the Court has no discretion to consider the income of the second marriage of the parties. The standards do indicate those among the reasons for deviation of the standards employed by the guidelines?  It would be helpful to all of us to know what the rule is on this.

THE COURT:   I don't think anybody knows what

2

the rule is. That's the problem. It's been dumped on us against our wishes. We all agree it's probably unfair, but it's the law.

MR. WALKER: In terms of new marriages, Courts are not to consider those incomes?

THE COURT: No one has adopted any guidelines as far as new marriages are concerned.

MR. WALKER: The standards do --

THE COURT: They mention them but don't tell you what you can do.

MR. WALKER: -- say discretion where resources and combined incomes --

THE COURT: If you are going to compute resources, you have to compute guidelines on total resources; don't you? If you do that, then you are off the chart -- way up off the chart. If I take both families' income, I am clearly off the chart and it's going to be higher probably. I don't think you can take both families income which includes income and, say, "Well, that's a basis to reduce." I don't see that makes any sense. We are grappling for a rule. All I'm saying, if I am going to do it at all I have to use totals of both of them; and if I am going to use totals of both I have to use totals for a monthly basis and use that monthly basis and use the guidelines, and the figures would be higher if I use the total. In this case I'm sure that figure would be higher

because we are talking about -- according to your client's affidavit -- we are talking about $91,000 of income, and divided by 12, we are way up in the chart. In fact, we are off the chart, and then we are talking about $1261 per child. And if you divide by two it's still more. That's what I'm trying to tell you.

You're addressing the wrong people. We understand that. The judges understand that, and we don't like it. But I don't think there is anything we can do.

MR. WALKER: You're saying there is no discretion in this particular standard?

THE COURT: I'm saying I do not think I can exercise my discretion to lower child support because of high income. That's what I'm saying. If I were exercising my discretion that way I might say, "Well, here's two families that make $91,000 total. This is not enough." I just don't think I can exercise my discretion downward.

MR. WALKER: Thank you.

*******

///

4

786

In Re the Marriage of:      )
                            )
JUDITH ANN (GRIFFIN) BOOTH, )
                            )    NO. 82-3-00184-9
              Petitioner,   )
                            )    ORDER AMENDING DECREE
and                         )
                            )
GENE ROSS GRIFFIN,          )
                            )
              Respondent.   )

THIS MATTER coming before the Court this 15th day of September, 1988, upon petition of JUDITH ANN GRIFFIN BOOTH, for the purpose of: (1) modifying the original Decree of Dissolution to adjust child support to comply with current guidelines; (2) to allow Petitioner income tax exemptions for the minor children; (3) to modify health care coverage; and (4) request attorney's fees. The Petitioner was present and represented by Timothy W. Mahoney. The Respondent, GENE ROSS GRIFFIN, was present and with his attorney, P. Craig Walker. Before the hearing the Petitioner withdrew her request to modify health care coverage. The Court having reviewed the files and records herein, having heard argument of counsel and being otherwise advised, does hereby

ORDER, ADJUDGE AND DECREE that:

(1) Under the State Child Support guidelines effective July 1, 1988, this Court has no discretion to make a downard adjustment from scheduled support based upon the resources available to Petitioner by

ORDER AMENDING DECREE - 1

virtue of her second marriage, or any of the other circumstances outlined in Respondent's affidavit;

(2) Child support shall be modified to comply with the guidelines established and adopted in the State of Washington and that such amount shall be Four Hundred Twenty Four and no/100 Dollars ($424.00) per month per child starting _September 1_, 1988.

(3) That Petitioner's request to modify the original Decree regarding the tax exemptions for the minor children is denied;

(4) That the Petitioner's request for attorney's fees is denied.

DATED this _22_ day of September, 1988.

_____
ROBERT S. DAY, JUDGE

Presented By:
COWAN, WALKER, JONSON, MOORE & NICKOLA

By:_____
    P. CRAIG WALKER
    Attorney for Respondent

ORDER AMENDING DECREE - 2