2015 APR -6 AM 10: 29



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Parentage of S.H.P.-A., | ) ) ) | No. 71456-2-I |
| A Minor Child, | ) ) | DIVISION ONE |
| EILEEN C. ACHESON, | ) ) | |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| MARK E. PHILLIPS, | ) ) | |
| Appellant. | ) ) | FILED: April 6, 2015 |

SCHINDLER, J. — Mark E. Phillips appeals the child support order and parenting

plan restrictions imposed by the court in this parentage action. We affirm in all respects.

In 2005, Phillips founded a successful high-tech start-up company, MOD

Systems. Phillips served as the chief executive officer (CEO) of MOD Systems.

Phillips and Eileen C. Acheson began dating in January 2010. Around the same

time, the Federal Bureau of Investigation was conducting a fraud investigation of

Phillips. The investigation resulted in criminal charges against Phillips in March 2010

for wire fraud, mail fraud, money laundering, and attempted bank fraud. The federal

court allowed home monitoring for Phillips pending trial. In July or August, Acheson

became pregnant.

In August, Phillips attended church with Acheson. When they returned home from church, Acheson went to take a nap. Two hours later, Acheson found Phillips unconscious on the floor of the upstairs bathroom surrounded by empty bottles of dust cleaner. Acheson called 911. The next day, the federal court remanded Phillips into custody.

In November, a psychiatrist diagnosed Acheson with acute anxiety and post-traumatic stress disorder (PTSD). Acheson took a medical leave of absence from her job and received disability benefits.

In March 2011, a jury found Phillips guilty of wire fraud, mail fraud, and money laundering. In April, Acheson gave birth to S.H.P.-A.

In July, the court sentenced Phillips to 48 months in prison followed by supervised release for 3 years. In the fall of 2011, Acheson took S.H.P.-A. to visit Phillips at the federal prison in Sheridan, Oregon. Shortly after the visit, Acheson stopped communicating with Phillips.

Petition for Parenting Plan and Child Support

In February 2012, Acheson filed a "Petition for Residential Schedule/Parenting Plan/Child Support." Phillips refused to sign the proposed parenting plan. The court referred the case to King County Superior Court Family Court Services (FCS) to conduct a parenting plan evaluation. FCS evaluator Jennifer Bercot interviewed Acheson, Phillips, and a number of family members and friends. Bercot also conducted a home visit with Acheson and S.H.P.-A.

In September 2012, Phillips completed a substance abuse treatment program in prison. On October 1, Phillips was released from prison to serve six months on work

release at the Pioneer Fellowship House Residential Reentry Center on condition that he obtained a job. Phillips made arrangements to work for a friend and former MOD Systems client at the Battson Consulting Group (BCG). In late October, Phillips began dating Jennifer Schweickert. Phillips's employment with BCG ended when he completed the six-month work release sentence in 2013.

On April 19, 2013, Bercot filed a "Parenting Plan Evaluation." The Parenting Plan Evaluation states Phillips "has not spent time with the child aside from one time since the child's birth."

The four-day trial on the petition to establish a parenting plan, a residential schedule, and child support began on August 12, 2013. A number of witnesses testified, including Bercot, Acheson, Phillips, and Schweickert. The court admitted into evidence a number of exhibits, including the Parenting Plan Evaluation, the paystubs Phillips submitted while on work release beginning in October 2012, tax returns for Acheson for 2010 through 2012, and bank statements.

Bercot testified that based on her observations during the home visit with Acheson, "the mother and the child hav[e] a natural bond." Bercot testified that she was concerned about "the absence of a relationship" between Phillips and S.H.P.-A. Bercot said she "wasn't able to have a parent-child observation" with Phillips because "[t]he father was not having contact with the child at that time." Bercot also described a number of risk factors she identified during her evaluation of Phillips, including his criminal conviction, lack of accountability, and history of substance abuse and unstable mental health.

Acheson testified that she was diagnosed with acute anxiety and PTSD while she was pregnant with S.H.P.-A. Acheson said anxiety prevented her from returning to work. Acheson testified she receives $3,440 per month in federal disability benefits. Acheson stated she no longer receives disability payments from her previous employer because "[t]he maximum period of benefits under th[at] contract has been exhausted."

Phillips submitted five paystubs showing he earned $2,500 per month working at BCG while on work release. Phillips testified he has not been able to find a job since his release because "it's difficult to get that level of trust just being released from custody."

Schweickert testified that she supports Phillips financially and that they plan to move to California "[a]s soon as he's allowed to move and as soon as we get through the bulk of the court visits."

At the conclusion of trial, the court entered a final parenting plan, an order of child support, child support schedule worksheets, and findings of fact and conclusions of law.

The final parenting plan imposes restrictions under RCW 26.09.191 on Phillips's residential time with the child based on finding that he engaged in "willful abandonment that continues for an extended period of time," "substantial refusal to perform parenting functions," neglect, and the absence of emotional ties with S.H.P.-A. that "may have an adverse effect" on the best interests of the child. The final parenting plan requires supervised visitation with S.H.P.-A. and eliminates mutual decision-making. The court ordered Phillips to enroll in and complete a parenting class at Wellspring Family Services and "remain[ ] abstinent from drugs and alcohol."

In determining the amount of child support, the court found Phillips's income is "unknown." Using the the "net monthly income table," the court imputed income to Phillips in the amount of $3,448.00. The court used the "[a]ctual monthly [n]et [i]ncome" of $3,033.74 from federal disability benefits for Acheson, as well as earned interest and dividends. The combined monthly child support obligation was $924.00 and the monthly day care expenses were $1,080.00. Based on the proportionate share of income, the court ordered Phillips to pay $491.57 for basic child support plus $590.52 for day care expenses each month. The court ordered Acheson to pay $432.43 for child support and $519.48 for day care expenses.

Phillips filed a motion for reconsideration of the decision to impute income and to require him to pay day care expenses. Phillips also requested clarification as to whether he could enroll in a parenting class with a different provider. The court denied the motion for reconsideration but allowed Phillips to enroll in a parenting class with an alternative provider. Phillips appeals the order of child support and the decision to impose restrictions in the parenting plan.

Notice of Appeal

Preliminarily, Acheson asserts that Phillips cannot challenge the final parenting plan because he did not comply with RAP 2.4(a) and 5.3(a). See RAP 2.4(a) (the appellate court will review the decision designated in the notice of appeal); RAP 5.3(a) ("The party filing the notice of appeal should attach to the notice of appeal a copy of the signed order or judgment from which the appeal is made."). Phillips did not attach a copy of the final parenting plan to the notice of appeal. However, because Phillips attached a copy of the findings of fact and conclusions of law that expressly

5

incorporates the final parenting plan by reference, we address his challenge to the final parenting plan. See RAP 1.2(a) (We liberally interpret the rules of appellate procedure "to promote justice and facilitate the decision of cases on the merits.").

Standard of Review

We review the trial court's decision in a parenting plan and child support action for abuse of discretion. In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997); In re Marriage of Griffin, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). The court abuses its discretion only if the decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Littlefield, 133 Wn.2d at 46-47.

We review the court's findings of fact for substantial evidence. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). Substantial evidence is the quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. Katare, 175 Wn.2d at 35. We defer to the court's determination on issues of credibility and persuasiveness of the evidence. In re Marriage of Meredith, 148 Wn. App. 887, 891 n.1, 201 P.3d 1056 (2009). Credibility determinations are the province of the trier of fact and will not be disturbed on appeal. In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011).

Final Parenting Plan

Phillips challenges the decision to impose restrictions in the final parenting plan under RCW 26.09.191. RCW 26.09.191 mandates the imposition of restrictions on decision-making authority and residential time with the child when the court finds willful abandonment or substantial refusal to perform parenting functions. RCW

6

26.09.191(1)(a), (2)(a)(i). RCW 26.09.191(1) and (2)(a) state, in pertinent part:

> (1) The permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in any of the following conduct: (a) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions . . . .
> (2)(a) The parent's residential time with the child shall be limited if it is found that the parent has engaged in any of the following conduct: (i) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions.[1]

Phillips argues the court improperly relied on the recommendation of FCS evaluator Bercot to impose RCW 26.09.191 restrictions. Phillips asserts Bercot's recommendation was based on unfounded allegations of domestic violence. The record does not support his argument.

The record shows the mandatory restrictions under RCW 26.09.191(1) and (2)(a) are based on the court's specific findings of willful abandonment, neglect, and substantial refusal to perform parenting functions, not allegations of domestic violence.

In the Parenting Plan Evaluation, Bercot recommended the court impose restrictions in the parenting plan based on "substantial nonperformance of parenting functions and an absence of emotional ties between the father and the child." Finding of fact 2.3 states, in pertinent part:

> Ms. Bercot is an experienced Family court evaluator and has provided the necessary testimony to support her recommendations for the Parenting Plan for the minor child [S.H.P.-A.] The Father could have started to begin a relationship with his son, has not ever asked to be the primary residential parent and the testimony at trial was that he planned on moving to Southern California.

---

[1] Phillips also challenges the findings that support the imposition of restrictions under RCW 26.09.191(3). Findings under RCW 26.09.191(3) are discretionary. In re Marriage of Watson, 132 Wn. App. 222, 231-32, 130 P.3d 915 (2006). Because the court was required to impose restrictions under RCW 26.09.191(1)(a) and (2)(a)(i) based on its findings of willful abandonment and substantial refusal to perform parenting functions, we need not address Phillips's challenge to the findings under RCW 26.09.191(3).

The final parenting plan provides, in pertinent part:

## II. Basis for Restrictions

. . . .

### 2.1 Parental Conduct (RCW 26.09.191(1), (2))

Mark Phillips has engaged in willful abandonment that continues for an extended period of time and a substantial refusal to perform parenting functions.

Phillips next claims substantial evidence does not support finding willful abandonment and substantial refusal to perform parenting functions under RCW 26.09.191(1)(a) and (2)(a)(i). Substantial evidence supports finding willful abandonment and substantial refusal to perform parenting functions and the imposition of restrictions in the final parenting plan under RCW 26.09.191(1)(a) and (2)(a)(i).

The testimony showed Phillips had played no role in S.H.P.-A.'s life and had not demonstrated any interest in establishing a relationship with the child. Acheson testified that when she brought S.H.P.-A. to Phillips's sentencing hearing, "he didn't even really look" at his child. Acheson said when she visited Phillips in prison with S.H.P.-A., Phillips made no effort to pay attention to or talk about the child and seemed more interested in getting food from the vending machine. The testimony showed that since his release, Phillips made no effort to spend time with the child and planned to move to California.

Imputing Income

Phillips contends the trial court erred by imputing income based on the median net income for a year-round full time worker under RCW 26.19.071(6)(e).

Under RCW 26.19.071(6), when a parent is voluntarily unemployed, and absent documentation of actual earnings, the court must impute income according to a statutory order of priority. RCW 26.19.071(6) states, in pertinent part:

> **Imputation of income.** The court shall impute income to a parent when the parent is voluntarily unemployed . . . . In the absence of records of a parent's actual earnings, the court shall impute a parent's income in the following order of priority:
>   (a) Full-time earnings at the current rate of pay;
>   (b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;
>   (c) Full-time earnings at a past rate of pay where information is incomplete or sporadic;
>   (d) Full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent . . . has recently been released from incarceration, or is a high school student;
>   (e) Median net monthly income of year-round full-time workers as derived from the United States bureau of census, current population reports, or such replacement report as published by the bureau of census.

The legislature enacted the statutory order of priority to ensure that when a court imputes income to a voluntarily unemployed parent, the amount reflects "the level at which the parent is capable and qualified." In re Marriage of Sacco, 114 Wn.2d 1, 4, 784 P.2d 1266 (1990).

There is no dispute that Phillips is voluntarily unemployed and that he submitted no documentation of actual earnings except the five paystubs while working at BCG during his work release sentence. The court found that Phillips's income "is unknown," and that "the first option for which there is information" was the median monthly income for a full time worker under RCW 26.19.071(6)(e).

Phillips contends the court erred by imputing income based on the median net income for a year-round full time worker under RCW 26.19.071(6)(e) rather than "[f]ull-time earnings at the historical rate of pay based on reliable information, such as security

employment department data," under RCW 26.19.071(6)(b) or "[f]ull-time earnings at a past rate of pay where information is incomplete or sporadic" under RCW 26.19.071(6)(c). In the alternative, Phillips argues that because he has "recently been released from incarceration," the court should have imputed income based on full time earnings at "minimum wage" under RCW 26.19.071(6)(d). The record does not support Phillips's arguments.

Phillips did not submit "employment security department data" or other "reliable information" to establish a historical rate of pay or full time earnings at a past rate of pay where information is incomplete or sporadic. See RCW 26.19.071(6)(b), (c). Phillips testified he worked as the chief technology officer at Fullplay Media Systems Inc. before founding MOD Systems in 2005 but did not submit any documentation of his income from either company. As noted, the only documentation Phillips submitted consisted of five paystubs while working at BCG while on work release beginning in October 2012.

Phillips testified that he has not worked since March 2013 and that to pay expenses, his friends and Schweickert gave him "gifts" in the form of cash, checks, and bank transfers. Phillips's financial declaration shows he received over $75,000 from friends to pay his legal fees for the criminal and civil litigation. Phillips testified that "more than $10,000" of the $75,000 came from the friend and former client who employed him at BCG.

The trial court was entitled to reject Phillips's testimony about his finances and his ability to earn income as not credible. The evidence showed that after Phillips completed his work release sentence, he moved to a condominium in Belltown. Bank records show that Phillips made a number of significant deposits during the next three

months, including six deposits of $1,000 or more. Phillips testified that after obtaining a degree in computer science and architecture, he was the chief technology officer at Fullplay Media and served on the company's board of directors. Phillips testified he developed the first portable digital media player and sold it to Microsoft. Phillips also testified that as CEO of MOD Systems, he secured a contract with Starbucks to develop a music downloading system. According to Phillips, he owned "super valuable" source code and patents for the software he developed for MOD Systems that enabled him to raise $35 million from investors. The court did not abuse its discretion by imputing income to Phillips for purposes of child support that reflects the level at which he is "capable and qualified" and using net monthly income for a year-round full time worker under RCW 26.19.071(6)(e).[2] See Sacco, 114 Wn.2d at 4.

Day Care Expenses

Phillips next contends there is no evidence to support the finding that day care expenses are either "reasonable and necessary" or that Acheson "actually incurred" the expenses.

The trial court has authority to require a parent to pay day care expenses as part of the parent's child support obligation. "The court may exercise its discretion to determine the necessity for and the reasonableness of" the amount of day care expenses entered in the child support worksheets. RCW 26.19.080(4). "[W]e interpret the terms 'necessary and reasonable expenses' and 'day care' in a manner that serves

---

[2] For the first time in his reply brief, Phillips challenges the court's finding that his income is unknown. Phillips did not assign error to this finding in his opening brief as required by RAP 10.3(a)(4). See Sacco, 114 Wn.2d at 5 ("This court does not consider issues raised for the first time in a reply brief."). In any event, substantial evidence supports the court's finding that Phillips's income is unknown. The only income evidence he submitted was related to the work he did at BCG while on work release.

the best interests of children." In re Marriage of Mattson, 95 Wn. App. 592, 600, 976 P.2d 157 (1999).

Substantial evidence supports the court's finding that monthly day care expenses of $1,080 are necessary and reasonable. The record shows Acheson suffers from acute anxiety and PTSD. In addition to attending regular support group meetings, Acheson meets with an Al-Anon Family Groups counselor once a week, a family therapist every other week, and a Jewish Family Service counselor twice a month. Acheson testified that she pays a family friend $15 per hour, approximately 18 hours per week, to help care for S.H.P.-A. The court did not abuse its discretion in requiring Phillips to pay his proportional share of the day care expenses.

The case Phillips relies on, In re Marriage of Fairchild, 148 Wn. App. 828, 207 P.3d 449 (2009), is inapposite. In Fairchild, the court entered an order requiring the father to pay his proportional share of day care and medical expenses. Fairchild, 148 Wn. App. at 830. By 2007, the father owed the mother over $37,000 in past due child support. The father filed a motion asking the court to reduce the amount owed because the mother did not actually incur day care expenses. Fairchild, 148 Wn. App. at 830. We held the mother's declaration alone was insufficient to establish day care expenses were "actually incurred" and remanded to determine the "reimbursable expenses." Fairchild, 148 Wn. App. at 832-33. We declined to address the father's challenge to future payments, stating that "it is premature for [the father] to complain about payments he has yet to make." Fairchild, 148 Wn. App. at 833.

Here, the order of child support specifically states that once Phillips had paid his proportional share of day care expenses, he "may be able to seek reimbursement for day care or special child rearing expenses not actually incurred."

We affirm.[3]

WE CONCUR:

_Trickey, J_

_Cox, J._

---

[3] We decline to award Acheson attorney fees on appeal under RCW 26.09.140 and RAP 18.9.