**FILED**
**JUNE 11, 2019**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 34987-0-III |
| | ) | |
| TY DORLAND, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| SHELLEY DORLAND, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, C.J. — Ty Dorland appeals the trial court's orders of child

support and spousal maintenance. We affirm.

FACTS

Ty Dorland and Shelley Dorland were married for 23 years and have two

daughters. The older daughter was 18 and the younger daughter was 16 at the time of

trial. For ease of reference, we refer to the parties by their first names.

Ty obtained a degree in construction management from Eastern Washington

University, and he worked for the same construction firm for 24 years. Shelley obtained a

degree in sociology from Eastern Washington University. However, her work history is sporadic.

Shelley worked at Airway Heights Corrections Center for five years starting in 1995 and made around $30,000 per year. After staying at home for a while, Shelley worked at a preschool for three months making $10 per hour. Shelley then worked briefly and part-time for the Cheney school district, making $12 per hour. Shelley later worked for the Mead school district, initially making $12 per hour and eventually making $14 per hour. At the time of trial, Shelley worked for Traffic Corp, part-time, at $14 per hour. She testified she only earned approximately $400 per month. But during the busy months, Shelley grossed about $2,000 per month.

The trial court calculated Ty's net income at $5,502 per month and imputed Shelley's net income at $1,758 per month. The trial court imputed a much higher monthly income to Shelley than her historical part-time earnings by imputing income as if she worked full-time at $12 per hour.

The trial court calculated Ty's standard child support payment at $1,456 per month. The trial court deviated from the standard payment and ordered Ty to pay only $800 per month for both daughters. The trial court explained its reason for the deviation as "tax planning considerations that will not reduce the economic benefit to the children.

2

The Court has ordered a combined maintenance and child support payment of $1,800.00 with $800.00 ordered as child support and $1,000.00 ordered as spousal maintenance." Clerk's Papers (CP) at 55.

The trial court ordered child support to discontinue for the older daughter when she turned 18; but at that time, increased the child support for the younger daughter to $800 per month. The order required payment of child support for the younger daughter until she turned 18 or graduated from high school, whichever occurred later.

Next, the trial court considered Shelley's request for spousal maintenance. The court considered the appropriate factors under RCW 26.09.090. The court found there was not a lot of community property divided between Ty and Shelley, and Shelley's income was much lower than Ty's. The court also heard testimony that Shelley was not seeking any additional education or training to increase her employment prospects, and her efforts in finding a full-time job had been minimal. The court characterized the standard of living during the 23-year marriage as a "middle class lifestyle." Report of Proceedings (Oct. 5, 2016) (RP) at 27. Ty and Shelley did not have many bills or debt, and they lived a comfortable lifestyle. Finally, the trial court considered Shelley's financial obligations, coupled with Ty's ability to meet his own financial needs along with meeting Shelley's. The trial court found that Shelley should not have trouble finding

employment, and she was then currently employed with minimal debt. On the other hand, Ty was assessed the minimal community debt and had a net income of $5,500 per month. Ty's financial declaration listed a monthly financial need just shy of $2,000. Considering the aforementioned factors, the trial court ordered Ty to pay Shelley spousal maintenance as follows:

> October 1, 2016 to June 30, 2018 - $1,000 per month
> July 1, 2018 to September 30, 2018 - $1,800 per month
> October 1, 2018 to September 30, 2020 - $1,300 per month
> October 1, 2020 to September 30, 2022 - $1,000 per month

*See* CP at 66.

The trial court articulated that "maintenance is not just a means of meeting basic needs or providing the bare necessities, but it is a flexible tool by which the parties' standard of living can be equalized for an appropriate period of time." RP at 31 (citing *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984)). The spousal maintenance schedule assured that child support and spousal maintenance totaled $1,800 until October 1, 2018, at which time child support stopped. After then, maintenance was $1,300 per month for two years and then was reduced to $1,000 for the final two years.

Ty timely appealed to this court.

ANALYSIS

Ty argues (1) the trial court erred in determining child support by not adequately imputing income to Shelley, and (2) the trial court erred in determining the amount and duration of spousal maintenance to Shelley.

Generally, a trial court's decision in a dissolution proceeding will seldom be changed on appeal. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). The record is reviewed in the light most favorable to the party in whose favor the finding is entered. *In re Marriage of Gillespie*, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997). A trial court's order on child support is reviewed for an abuse of discretion. *Griffin*, 114 Wn.2d at 776. Similarly, a trial court's order on spousal maintenance is reviewed for an abuse of discretion. *In re Marriage of Zahm*, 138 Wn.2d 213, 226-27, 978 P.2d 498 (1999). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

1.    SHELLEY'S IMPUTED INCOME

Ty argues the trial court's imputation of income to Shelley was erroneously low and caused Shelley's child support obligation to also be erroneously low. We disagree.

5

A trial court "shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed." RCW 26.19.071(6). The court will impute income in the following order of priority: (1) full-time earnings at the current rate of pay, (2) full-time earnings at the historical rate of pay, based on reliable information, (3) full-time earnings at a past rate of pay where information is incomplete or sporadic, (4) full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent has a recent history of minimum wage earnings, and, (5) median net monthly income of year-round, full-time workers from the United States Bureau of Census. *Id.*

Here, the trial court imputed Shelley's gross income at $2,083 per month and a net income at $1,758 per month. The trial court imputed this income based on RCW 26.19.071(6)(b), Shelley's full-time earnings at the historical rate of pay, based on reliable information. At trial, the evidence showed that Shelley's job history was sporadic. Although she currently had a job as a traffic flagger for Traffic Corp making $14 dollars per hour, Shelley testified the job was seasonal and part-time. Shelley's full-time historical rate of pay at school districts was around $12 dollars per hour with few exceptions. The court agreed with these facts presented at trial. At $12 dollar per hour, Shelley's yearly income would be around $25,000 dollars per year or just over $2,000 per month. The trial court could not impute income by full-time pay at current rate of pay

because Shelley's current job was not full-time. It was part-time and seasonal. Because the trial court did not abuse its discretion in making this determination, there was no error here. It stands to reason that if there was no error in Shelley's imputed income, there was no error in Shelley's child support obligation.

2.    SPOUSAL MAINTENANCE

a.    Amount

Ty argues that the court erred in calculating the amount and duration of spousal maintenance to Shelley. We disagree.

RCW 26.09.090(1) provides:

The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:
    (a)  The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
    (b)  The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
    (c)  The standard of living established during the marriage or domestic partnership;
    (d)  The duration of the marriage or domestic partnership;
    (e)  The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f)  The ability of the spouse or domestic partner from whom
maintenance is sought to meet his or her needs and financial obligations
while meeting those of the spouse or domestic partner seeking maintenance.

This list is not an exclusive list to the trial court, and the trial court need not find

all the factors when determining a maintenance award.  *Washburn*, 101 Wn.2d at 179.

Spousal maintenance is awarded to support a spouse until that spouse can become self-

supporting.  *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994).

The trial court did not abuse its discretion in its award of spousal maintenance to

Shelley.  The court considered all of the appropriate factors.  The court considered the

fact that Ty and Shelley had been married for 23 years and characterized their marriage

lifestyle as "middle class."  The trial court also recognized Shelley's resistance to obtain

any additional training or education and her lackluster effort to find a full-time job.

However, Ty's ability to pay was apparent, and Shelley had a need.

Ty's net income is $5,500 per month, yet his monthly bills are less than $2,000.

Shelley testified that her bills were $3,500 dollars per month.  Her imputed net income

was only $1,758 per month.  This put a gap between Shelley's bills and her income of

about $1,700.  At its height, for only three months, Ty has to pay Shelley $1,800 per

month in spousal maintenance.  This still leaves Ty with a net income of more than

$3,700, which is more than his monthly bills.  After that, the maintenance reduces to

$1,300, then to $1,000 per month. At her current financial status, that maintenance during the final four years does not cover her bills and slowly weans Shelley off support to become self-supporting.

> b.      Duration

Ty also argues the trial court erred in determining the duration of spousal maintenance. We also disagree with this argument.

The trial court considered the above factors and ordered spousal maintenance for a period of seven years after the parties separated. We note that had the trial court imposed child support consistent with the standard calculation, Ty's child support payment would have been $1,492 until the oldest daughter turned 18. Arguably, Ty really began paying maintenance after the oldest daughter turned 18. If so, his real maintenance obligation is for less than six years. There is no per se rule for determining the duration of spousal maintenance for long-term marriages. One year of maintenance for every four years of marriage is not unusual, given the parties' current and likely future disparity in earnings. The spousal maintenance award provides a temporary means for Shelley to live a lifestyle similar to how she lived during the marriage. We conclude there were tenable grounds for the duration of spousal maintenance, and the trial court did not abuse its discretion.

No. 34987-0-III
*In re Marriage of Dorland*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.

Fearing, J.

10