IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| SHAWNA L. HUBBARD, | No. 78682-2-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| MARCUS T. ROSS, | |
| Appellant. | FILED: November 18, 2019 |

CHUN, J. — Marcus Ross appeals an order modifying child support for his children with Shawna Hubbard. Because the trial court did not credit Ross for health insurance premiums paid for the children, we reverse in part and remand for further proceedings. In all other respects, we affirm.

## I. BACKGROUND[1]

In 2009, Ross and Hubbard dissolved their marriage and entered into an agreed child support order for their two children. In 2014, when the children were ages 9 and 11, the court modified the child support order and set Ross's transfer payment to Hubbard at $600.50 per month.[2]

In December 2017, Hubbard petitioned to increase Ross's child support obligation, claiming that the children were entitled to more support under the

---

[1] We detail additional facts, where necessary, in our discussion of Ross's claims.

[2] The record does not include either the 2009 order or the 2014 modification pleadings.

statutory guidelines[3] and that the parties' income had changed. Ross did not disagree that a modification was warranted but disputed the amount of Hubbard's income. Ross also requested reimbursement for past day care expenses.

Following a May 2018 trial by affidavit, a superior court commissioner imputed Hubbard's net monthly income at $2,605, modified Ross's transfer payment to $967 per month, and ordered Ross to maintain health insurance for the children. The commissioner also rejected Ross's claim for reimbursement.

Ross moved for revision of the commissioner's order. A superior court judge adopted the commissioner's rulings and denied the motion. Ross appeals from the order denying revision.[4]

## II. DISCUSSION

Ross challenges the order modifying his child support obligation on several grounds.

### A. Standard of Review

Once the superior court rules on a motion for revision, any further appeal is from the superior court's decision, not the commissioner's ruling. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). We review an order modifying child support for an abuse of discretion. In re Marriage of Griffin, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). A superior "court does not abuse its discretion where

---

[3] At the time, the economic tables calculated child support amounts for children aged 12-18 higher than for children 0-11. Former RCW 26.19.020 (2016). The children were ages 12 and 15 at the time of the petition.

[4] Though the parties represent themselves on appeal, we hold them to the same standards as attorneys. In re Marriage of Wherley, 34 Wn. App. 344, 349, 661 P.2d 155 (1983) (self-represented litigants and attorneys are both "subject to the same procedural and substantive laws.")

the record shows that it considered all the relevant factors and the child support award is not unreasonable under the circumstances." State ex rel. J.V.G. v. Van Guilder, 137 Wn. App. 417, 423, 154 P.3d 243 (2007). We will not disturb findings of fact supported by substantial evidence even if there is conflicting evidence. In re Marriage of Lutz, 74 Wn. App. 356, 370, 873 P.2d 566 (1994).

B. Health Insurance Credit

Ross first argues that the court erred by failing to give him a credit for health insurance premiums he paid for the children. We agree.

"In reaching a net child support transfer payment, a parent who pays for health insurance is allowed a credit against [their] basic support obligation equal to the cost of the insurance." In re Marriage of Scanlon, 109 Wn. App. 167, 175, 34 P.3d 877 (2001) (citing Ch. 26.19 RCW, App., Health Care Expenses). Here, there is evidence that Ross paid such premiums for the children. However, the court entered a child support worksheet that neither reflects the amount of premium Ross paid nor credits him for that amount.[5] Therefore, remand is necessary to enable the court to correct the child support worksheet to reflect Ross's payments for health insurance premiums.

---

[5] Hubbard argues that "Ross agreed to and signed the documents to reflect that he would not receive a credit for insurance premiums paid." Ross disputes this. Hubbard's argument does not contain citation to the record or authority. We will not consider an inadequately briefed argument. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3(a)(6). Nor are we aware of anything in the record to support this argument.

C. Hubbard's Income

Ross next argues that the modification was improper because the court failed to consider numerous large bank deposits and other substantial assets in calculating Hubbard's income. We disagree.

"All income and resources of each parent's household shall be disclosed and considered by the court when the court determines the child support obligations of each parent." RCW 26.19.071(1). A parent's income and deductions must be verified by tax returns for the prior two years and current paystubs, and "[o]ther sufficient verification" is required to verify "income and deductions which do not appear on tax returns or paystubs." RCW 26.19.071(2).

Attached to her modification petition, Hubbard filed two years of federal income tax returns, paystubs, and bank statements. The bank statements showed a year's worth of relatively large deposits—ranging from $4,852 to $13,328—into Hubbard's savings account and checking account. Ross argued this was evidence of Hubbard concealing income. In response, Hubbard attributed the large deposits to a "tax refund of a little over" $8,000, a cash advance from her work retirement plan, refunds from her cancelled wedding, and two $1,500 "transfers from external savings accounts."

During the proceedings, the court expressly considered Hubbard's bank deposits but could not determine if it was income. Instead, the court used Hubbard's income tax returns and child support worksheets to impute her income. Accordingly, the court correctly avoided speculating at Hubbard's

4

income.[6] State ex rel. Stout v. Stout, 89 Wn. App. 118, 125, 948 P.2d 851 (1997) ("A court exercises its discretion in an untenable and manifestly unreasonable way when it essentially guesses at an income amount.") (citing In re Marriage of Bucklin, 70 Wn. App. 837, 841, 855 P.2d 1197) (1993)).

The court's determination of Hubbard's income was well within the disputed evidence provided by the parties and is supported by substantial evidence. The court did not abuse its discretion.

Ross's contention that the court erred by failing to consider Hubbard's other assets (e.g., interest in a business, boat, cabin, recreational vehicle) is similarly unavailing. The record indicates otherwise. The court considered evidence showing that, in October 2017, Hubbard no longer had a partnership interest in the business she created with a former fiancé. The court determined that Ross failed to meet "the burden of proof as it relates to the alleged assets: the boat, the RV camper, the vehicles, the trailer, the cabin." Because he was unable to provide the evidence required to prove his claim, Ross has failed to show that the court exercised its discretion "in an untenable or manifestly unreasonable way." Griffin, 114 Wn.2d at 779.

D. Reimbursement of Day Care Expenses

Ross also claims that the trial court erred by denying him reimbursement for child care expenses that he had paid but Hubbard had not incurred. He

---

[6] Though the record contains evidence that Hubbard disclosed only one of multiple savings accounts below, the court was within its discretion to impute her income. See RCW 26.19.071(6); In re Marriage of Sievers, 78 Wn. App. 287, 305-06, 897 P.2d 388 (1995) (when a party fails to provide credible evidence of income, the trial court may determine income by any rational means based upon evidence in the record).

argues reimbursement is warranted by RCW 26.19.080(3)[7] and a provision in the parties' 2014 child support order.[8] We disagree.

In rejecting Ross's reimbursement claim, the court explained how neither party complied with the 2014 order, and how the evidence that they did provide was not sufficient enough to rule in favor of either party:

> One of the big problems is what the order required of the parents originally that they didn't do. They never followed the order. And now here I am all these years later being asked to go back and figure it out, and I can't. And I don't have enough information from either of you to say there was an overpayment, or there is a credit that is owed, or that one party should get reimbursed by the other. . . . But the bottom line is I'm not giving you—either one of you anything for daycare, [sic] zip, because you didn't follow the process that was created when this order was entered, for good or for bad.

The person asserting a claim for reimbursement under RCW 26.19.080(3) bears the burden of proving the facts needed to support it. See In re Marriage of Mattson, 95 Wn. App. 592, 601-02, 976 P.2d 157 (1999). Because Ross failed to support his claim with sufficient evidence, the court did not abuse its discretion in denying his reimbursement request. Griffin, 114 Wn.2d at 779.

---

[7] In pertinent part, RCW 26.19.080(3) provides:

> Day care and special child rearing expenses . . . shall be shared by the parents in the same proportion as the basic child support obligation. If an obligor pays court or administratively ordered day care or special child rearing expenses that are not actually incurred, the oblige must reimburse the obligor for the overpayment if the overpayment amounts to at least twenty percent of the obligor's annual day care or special child rearing expenses.

[8] Paragraph 3.15 (Payment for Expenses not Included in the Transfer Payment) of the parties' 2014 child support order provides as follows:

> The mother shall provide verification from the day care provider of amounts paid for daycare to the father on a monthly basis. Twice a year the parties will adjust for any over or under payment. The first adjustment will be June 30th, and the second adjustment will be December 30th.

> For purposes of this child support order, day care means only day care that is work or school related.

E.  Deviation for Significant Residential Time

Finally, Ross claims the court erred by failing to give him a deviation[9] from the standard child support obligation based on the amount of his residential time with the children.  This claim lacks merit.

The superior court has discretion to deviate from the basic child support obligation based on a variety of factors, one of which is the amount of residential time the children spend with the parents.  RCW 26.19.075.  The superior court "has discretion to decide the extent of any deviation."  In re Marriage of Trichak, 72 Wn. App. 21, 23, 863 P.2d 585 (1993).  Here, the trial court granted Ross the relief he sought.  It calculated Ross's transfer payment at $967 per month, which is a $200 deviation downward from the standard calculation of $1,167 per month due to Ross "spending significant time" with the children.  And Ross fails to present any authority or evidence to suggest that a $200 downward deviation was unreasonable or untenable.  The court did not abuse its discretion.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_Chun, J._

WE CONCUR:

_____    _____

---

[9] A deviation is "a child support amount that differs from the standard calculation." RCW 26.19.011(4).

7