IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE PARENTAGE OF A.L., | ) ) ) | No. 31711-1-III |
| STATE OF WASHINGTON, | ) ) | |
| Respondent, | ) ) | |
| | ) | PUBLISHED OPINION |
| v. | ) ) | |
| ERIN LEIGH ZASSO, | ) ) | |
| Appellant, | ) ) | |
| and | ) ) | |
| LETICIA LOPEZ, | ) ) | |
| Defendant. | ) | |

FEARING, J. — Must a parent who equally shares residential placement of his child with the other parent be excused from paying child support when the parent earns more than the other parent and the other parent receives public assistance for the child? The trial court answered in the negative. We affirm.

Erin Zasso, father of A.L., appeals the trial court's order directing him to pay $336 per month for child support. He claims he should pay no support since he shares residential placement of the child with the mother, Leticia Lopez, who agreed he need not

pay support. The State of Washington provides Lopez, with Temporary Assistance for Needy Families (TANF) to support A.L., and the State initiated this petition for modification of support.

## FACTS

On April 11, 2004, Leticia Lopez gave birth to A.L. For the first seven months of his life, A.L. lived in three different homes. He ultimately resided with his maternal grandmother after Erin Zasso, the father, assaulted Lopez, and Lopez served time in jail for drug crimes. Following the domestic violence incident, Zasso had no contact with A.L. for a year and a half, despite being permitted supervised visitation. Since released from jail, Lopez has lived in a household with her mother and A.L.

On February 27, 2006, the State of Washington, who provided TANF support to Leticia Lopez, filed a parentage action to establish Erin Zasso as A.L.'s father. A.L.'s maternal grandmother filed a third-party custody action, which the trial court consolidated with the parentage action. On February 23, 2007, the trial court granted summary judgment, finding that Zasso fathered A.L., ordering Zasso to make a support transfer payment, and ordering Zasso to pay back child support in the amount of $7,138.00.

On March 2, 2007, the trial court entered a temporary parenting plan that awarded Erin Zasso residential time with A.L. three nights per week in an alternating pattern with

2

A.L.'s maternal grandmother. The temporary plan afforded Zasso 43 percent of the residential time with A.L.

On March 23, 2007, Erin Zasso filed a motion to terminate his support obligation. The State did not object to the termination because it no longer provided TANF support to Leticia Lopez. On April 13, 2007, the lower court terminated Zasso's support obligation. The temporary parenting plan remained in place. In January 2012, the State resumed TANF payments to Leticia Lopez.

## PROCEDURE

On April 25, 2012, based on Leticia Lopez's receipt of TANF funds, the State of Washington filed this petition to modify Erin Zasso's child support obligation. On July 31, 2012, after the filing of this petition to modify, Leticia Lopez and Erin Zasso entered an agreed parenting plan in a different case. The plan and attendant order equally allocated A.L.'s residential time between Zasso and Lopez.

At the modification hearing in the present matter, Erin Zasso argued that his equal residential time with A.L. precluded the court from naming him as the obligor. He also complained that an imposition of a transfer payment would unfairly place the entire burden of supporting A.L. on him, particularly in light of shared custody of the child. He emphasized that Leticia Lopez had agreed that he owed no child support.

On August 21, 2012, the trial court issued rulings imposing transfer payments on Erin Zasso as a result of the TANF payments by the State of Washington to Leticia

3

Lopez. In its orders, the court adopted the child support worksheets provided by the State. The court determined Zasso's monthly net income at $1,911, and, because Lopez was voluntarily unemployed, imputed her income at $1,351 per month. The trial court determined Zasso's contribution for A.L.'s support at $336 and Lopez's contribution at $187 per month. The trial court ordered no deviation from the standard calculation because Zasso requested no deviation. The court ordered Zasso to make a support transfer payment to the Washington State Support Registry in the amount of $336 per month, effective May 1, 2012. The trial court later denied motions for revision and reconsideration.

## LAW AND ANALYSIS

### *STATE AUTHORITY FOR MODIFICATION PETITION*

Erin Zasso first contends that the State of Washington lacks the prerogative to seek a modification of child support obligations because Leticia Lopez, the party receiving TANF benefits, is not the primary residential parent, since he equally shares custody of the minor child. We disagree.

If the State pays public assistance for the care and maintenance of a child, the State may pursue a support action or a petition to modify support to obtain reimbursement of monies expended, in a process known as "subrogation." *In re Parentage of I.A.D.*, 131 Wn. App. 207, 217, 126 P.3d 79 (2006). In what could be considered excess, at least seven statutes confirm this authority. RCW 74.20A.030

4

provides, in pertinent part:

> (1) The [Department of Social & Health Services (DSHS)] shall be subrogated to the right of any dependent child or children or person having the care, custody, and control of said child or children, if public assistance money is paid to or for the benefit of the child, or for the care and maintenance of a child . . . , to prosecute or maintain any support action or execute any administrative remedy existing under the laws of the state of Washington to obtain reimbursement of moneys expended, based on the support obligation of the responsible parent established by a child support order. Distribution of any support moneys shall be made in accordance with RCW 26.23.035.

RCW 74.20.330 demands that the recipient of public assistance assign any rights he or she has to collect child support to DSHS. RCW 74.20.330 prescribes:

> (1) Whenever public assistance is paid under a state program funded under Title IV-A of the federal social security act as amended by the personal responsibility and work opportunity reconciliation act of 1996, and the federal deficit reduction act of 2005, each applicant or recipient is deemed to have made assignment to the department of any rights to a support obligation from any other person the applicant or recipient may have in his or her own behalf or in behalf of any other family member for whom the applicant or recipient is applying for or receiving public assistance.
>
> (2) Payment of public assistance under a state-funded program, or a program funded under Title IV-A, IV-E, or XIX of the federal social security act as amended by the personal responsibility and work opportunity reconciliation act of 1996 shall:
>
> (a) Operate as an assignment by operation of law; and
>
> (b) Constitute an authorization to the department to provide the assistance recipient with support enforcement services.

The State may initiate "an action in superior court to obtain a support order or obtain other relief related to support for a dependent child on whose behalf the department is providing public assistance." RCW 74.20.220(1). Under RCW

5

No. 31711-1-III
*In re Custody of A.L.*

74.20A.030(1):

> The department shall be subrogated to the right of *any* dependent child or children or person having the care, custody, and control of said child or children, if public assistance money is paid to or for the benefit of the child, or for the care and maintenance of a child.

(Emphasis added.)

The State of Washington's authority to seek subrogation extends to the right to file a petition to modify support. RCW 26.09.170 reads:

> (9) The department of social and health services may file an action to modify or adjust an order of child support under subsections (5) through (7) of this section if:
> (a) Public assistance money is being paid to or for the benefit of the child.

RCW 26.09.175 reads:

> (3) As provided for under RCW 26.09.170, the department of social and health services may file an action to modify or adjust an order of child support if:
> (a) Public assistance money is being paid to or for the benefit of the child.

Washington's version of the Parentage Act, chapter 26.26 RCW, prohibits the trial court from limiting or affecting the right of the State to seek reimbursement for support and services provided to the child. The relevant provision reads:

> The court shall not limit or affect in any manner the right of nonparties including the state of Washington to seek reimbursement for support and other services previously furnished to the child.

RCW 26.26.130(5).

When the State pays TANF to one parent, but the court still requires the other

6

parent to make a monthly support transfer payment, the money collected is used to reimburse the State for its expenditures for public assistance. *State ex rel. Sigler v. Sigler*, 85 Wn. App. 329, 337, 932 P.2d 710 (1997) (citing RCW 74.20A.030). The policy behind subrogation is to lessen the burden on the taxpaying public by demanding that parents help pay for the child's maintenance. *Sigler*, 85 Wn. App. at 337 (citing RCW 74.20A.010). The State has an interest in placing the primary responsibility for the care and support of children on parents rather than on the taxpayers. *State v. Wood*, 89 Wn.2d 97, 100, 569 P.2d 1148 (1977), *abrogated on other grounds by*, *Sw. Wash. Chapter, Nat'l Elec. Contractors Ass'n v. Pierce County*, 100 Wn.2d 109, 667 P.2d 1092 (1983); *Sigler*, 85 Wn. App. at 337.

Erin Zasso contends two Washington regulations circumscribe the State's authority to petition for a support modification under his circumstances. WAC 388-14A-2030(1) reads: "A custodial parent applying for or receiving cash assistance on behalf of a minor child assigns the family's rights to support as provided in WAC 388-14A-2035." In turn, WAC 388-14A-1020 defines a "custodial parent" as "the person, whether a parent or not, with whom a dependent child resides the majority of the time period for which the division of child support seeks to establish or enforce a support obligation." Zasso reads the two regulations together to argue that the State's subrogation rights extend only when the parent receiving the benefits resides with the child more than half of the time. Based on a reading of the Washington statutes and other regulations, we

disagree.

RCW 26.09.170 and .175 allow the State of Washington to request to modify an order of child support whenever public assistance is paid to benefit the child. We may admit that, under WAC 388-14A-1020, Leticia Lopez, the TANF recipient, is not the custodial parent, or at least not the sole custodial parent, because of shared placement of A.L. Nevertheless, Washington statutes do not limit the State's authority to file a modification to instances when the sole custodial parent is the recipient of the assistance.

Because of the statutes demanding subrogation, in order for Zasso to prevail on his argument, he must show that some other statute or regulation precluded Lopez from receiving TANF assistance from the State. WAC 388-14A-1020 and WAC 388-14A-2030 do not expressly preclude the assistance. Other regulations allow, rather than disallow, public assistance even when the recipient shares residential placement with another parent. Under the WAC child support scheme, assistance unit (AU) refers to "the group of people who live together and whose income or resources [the State] count[s] to decide . . . eligibility for [TANF] benefits and the amount of benefits." WAC 388-408-0005(1)(c). Pursuant to WAC 388-454-0005(2)(b) "[i]f relatives share physical custody of the child in equal amounts, [the State] include[s] the child in the AU of the parent or relative that first applies for assistance for the child." This latter regulation disassembles Zasso's contention. The parent who first applied here is Leticia Lopez. Erin Zasso disregards the explicit language of WAC 388-454-0005(2), which permits TANF

8

payments when parents share equal custody of their children. The language of WAC 388-454-0005(2) indicates the drafters contemplated the type of shared custody parenting situation in the current case.

Washington statutes and regulations directing the State of Washington to collect support from a parent whose child receives TANF benefits fulfill federal TANF requirements under 42 U.S.C. § 608(a)(3). The federal statute demands that a state, as a condition to participating in the TANF program, require each recipient to assign rights to collect child support. The statute does not condition assignment on the amount of time a child spends with his or her parents.

The State child support system, including the administrative scheme, statutory scheme, and public policy considerations, all negate Erin Zasso's argument that only custodial parents or parents who reside with the child more than half of the time can subrogate support rights to the State of Washington. The State had the authority to file the petition to modify the support obligations of Erin Zasso.

*ZASSO AS OBLIGOR WHEN SHARING RESIDENTIAL PLACEMENT*

The State of Washington may be subrogated to Leticia Lopez's rights to collect child support only if Lopez held the right to collect child support from Erin Zasso. Therefore, Zasso identifies the principal question raised by his appeal to be whether the father should be required to make a transfer payment to the mother when the two share custody of the child? Stated differently, may the court declare a parent who shares

residential placement with the other parent to be an "obligor" for purposes of support transfer payments? Zasso claims Washington has yet to clearly articulate standards for determining who the obligor parent should be in cases of shared custody.

The legislature's stated intent in enacting legislation imposing child support transfer payments is "to insure that child support orders are adequate to meet a child's basic needs and to *provide additional child support* commensurate with the parents' income, resources, and standard of living." RCW 26.19.001 (emphasis added). The legislature also intended that the child support obligation be "*equitably apportioned* between the parents." RCW 26.19.001 (emphasis added).

In Washington, both biological parents have an obligation to support their children regardless of marital status. *Linda D. v. Fritz C.*, 38 Wn. App. 288, 300, 687 P.2d 223 (1984). A parent's obligation for the care and support of his or her child is a basic tenet recognized in this state without reference to any particular statute. *State v. Wood*, 89 Wn.2d at 100.

When entering an order of child support, the trial court begins by setting the basic child support obligation. RCW 26.19.011(1); *State ex rel. M.M.G. v. Graham*, 159 Wn.2d 623, 627, 152 P.3d 1005 (2007). This obligation is determined from the statute's economic table, which is based on the parents' combined monthly net income, as well as the number and age of their children. RCW 26.19.011(1), .020. The trial court next allocates the child support obligation between the parents based on each parent's share of

the combined monthly income. RCW 26.19.080(1). The court then determines the standard calculation, which is the presumptive amount of child support owed by the obligor parent to the obligee parent. RCW 26.19.011(8); *Graham*, 159 Wn.2d at 627.

Erin Zasso emphasizes that RCW 26.19.011 fails to identify or establish any standards for who becomes the obligor or the obligee. We concede the statutory scheme could be clearer in answering the question of under what circumstances one may become an obligor. Nevertheless, we conclude the trial court held authority, under statutory sources as well as recent Washington precedent, to nominate Zasso as the obligor since he accrued the higher income and the mother received TANF benefits for the child, despite shared residential placement.

After determining the standard calculation and nominating the obligor, the trial court, if requested, considers whether it is appropriate to deviate upward or downward from the standard calculation. RCW 26.19.011(4), (8). The court has discretion to deviate from the standard calculation based on such factors as the parents' income and expenses, obligations to children from other relationships, and the children's residential schedule. RCW 26.19.075(1). If the court considers a deviation based on residential schedule, it must follow a specific statutory analysis:

> The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving

temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.

RCW 26.19.075(1)(d).

The trial court must enter written findings of fact supporting the reasons for any deviation or denial of a party's request for deviation. RCW 26.19.075(3); *Graham*, 159 Wn.2d at 627-28. A court's decision to deviate from the standard calculation for child support based on residential time is discretionary, but the court cannot deviate if it will result in insufficient funds in the household receiving the support, or if the child is receiving TANF. RCW 26.19.075(1)(d); *In re Marriage of Rusch*, 124 Wn. App. 226, 236, 98 P.3d 1216 (2004), *abrogated on other grounds by, In re Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007). After determining the standard calculation and any deviations, the trial court then orders one parent to pay the other a support transfer payment. RCW 26.19.011(9).

Erin Zasso never sought a deviation from the standard calculation. Granting a deviation may have been an abuse of discretion because of the mother receiving TANF benefits and having no other income.

The residential schedule deviation was added to the child support schedule in 1991. LAWS OF 1991, 1st Spec. Sess., ch. 28, § 6. Before 1991, the Washington Child

Support Guidelines allowed for a residential credit if the child resided overnight with both parents more than 25 percent of the time. Helen Donigan, *Calculating and Documenting Child Support Awards Under Washington Law*, 26 GONZ. L. REV. 13, 45 (1991). A separate worksheet provided space for determining the residential credit for each parent. Donigan, *supra*, at 45. This special worksheet also applied to cases where parents split residential time. Donigan, *supra*, at 45-46. The legislature did not retain this formula for residential credit against child support with the 1991 addition of statutory deviations. *See* RCW 26.19.075(1)(d); *In re Marriage of Schnurman*, 178 Wn. App. 634, 639-41, 316 P.3d 514 (2013), *review denied*, 180 Wn.2d 1010, 325 P.3d 914 (2014). The change in legislation suggests an intent to afford wider discretion to the trial court when considering a deviation for residential credit.

This court reviews a trial court's order of child support for abuse of discretion. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990); *In re Marriage of Schnurman*, 178 Wn. App. at 638. A trial court abuses its discretion if its decision rests on unreasonable or untenable grounds, or if it bases its ruling on an erroneous view of the law or involves incorrect legal analysis. *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007); *Schnurman*, 178 Wn. App. at 638. The legislature intended to allow judicial discretion in appropriate circumstances when calculating child support payments, and a reviewing court must defer to the sound discretion of the trial court unless the lower court abused its discretion. *In re Marriage of Griffin*, 114 Wn.2d at 776.

Recently, both the Washington Supreme Court and the Court of Appeals addressed the applicability of the standard child support schedule to cases of equally shared custody, such as the one currently at issue. The well-reasoned decisions compel denial of Erin Zasso's appeal.

In *State ex rel. M.M.G. v. Graham*, 159 Wn.2d 623, 152 P.3d 1005 (2007), the Washington Supreme Court decided a custody case in which the parents evenly shared residential placement of their children. The father's income exceeded the mother's revenue by over $4,000 per month, and the trial court named the father as the obligor, requiring that he make a transfer payment to the mother.

On appeal, the father in *Graham* argued that chapter 26.19 RCW did not adequately guide trial courts in determining parents' child support obligations when the parents shared equal custody and urged the court to adopt a new standard. The Supreme Court disagreed, and stressed that RCW 26.19.075 already provided trial courts with the discretion to deviate from the standard calculation, based on the residential schedule deviation found in RCW 26.19.075(1)(d). *Graham*, 159 Wn.2d at 636. Relying on RCW 26.19.075(1)(d), the Supreme Court explained, "[b]ecause the statute explicitly gives the trial court discretion to deviate from the basic child support obligation based on the facts of a particular case, a specific formula is neither necessary nor statutorily required to ensure the parents' child support obligation is properly allocated." *Graham*, 159 Wn.2d at 636. The court in *Graham* clarified that the trial court must still use the standard child

14

support schedule and statutory deviations in cases of shared custody. *Graham*, 159 Wn.2d at 636.

More recently, Division One of this court addressed a case of shared custody in *In re Marriage of Schnurman*, 178 Wn. App. 634, 636, 316 P.3d 514 (2013), *review denied*, 180 Wn.2d 1010, 325 P.3d 914 (2014). In *Schnurman*, the parenting plan dictated that the parents "share equal residential time with the children throughout the year." *Schnurman*, 178 Wn. App. at 637. The trial court first calculated the parents' child support obligation and found that the father's monthly net income was $6,338 and the mother's was $3,380. *Schnurman*, 178 Wn. App. at 637. Although the couple shared custody of their children, the trial court named the father as the obligor and required that he make a transfer payment to the mother. *Schnurman*, 178 Wn. App. at 637. The father requested a downward deviation from the standard calculation, but did not characterize it as a residential credit, instead arguing that the statutory deviations did not apply to cases of shared custody. *Schnurman*, 178 Wn. App. at 637. The trial court dismissed the father's argument, while noting the absence of evidence that the father's shared time with the children would significantly increase his costs to support the children or reduce his wife's expenses to support the children. *Schnurman*, 178 Wn. App. at 637.

The father in *Schnurman*, like Erin Zasso, also argued that only parents with whom children spend the majority of their residential time are entitled to a support transfer payment. *Schnurman*, 178 Wn. App. at 638. The court dismissed the father's

15

contention, stating that RCW 26.19.075, the statute governing deviations, applies in shared residential situations. *Schnurman*, 178 Wn. App. at 637 n.4. Relying on the Supreme Court's holding in *Graham*, the *Schnurman* court specified "that the statutory child support schedule applies in shared residential situations like here." *Schnurman*, 178 Wn. App. at 638 (citing *Graham*, 159 Wn.2d at 626). After describing the general child support determination process, the court explained the deviation procedure. *Schnurman*, 178 Wn. App. at 640. The court noted that a trial court may deviate when children share residential time equally between parents, but "a deviation would still be discretionary and should focus on the legislature's primary intent to maintain reasonable support for the children in each household." *Schnurman*, 178 Wn. App. at 641 (citing *State ex rel. M.M.G. v. Graham*, 123 Wn. App. 931, 933, 99 P.3d 1248 (2004). As in *Graham*, the court refused to set forth a formula for 50/50 shared custody obligation determinations. *Schnurman*, 178 Wn. App. at 642. The court explained that the child support schedule still applies in cases of shared custody; thus, RCW 26.19.075(1)(d) already provides trial courts with the discretion to deviate based on residential time, precluding the need for a specialized formula. *Schnurman*, 178 Wn. App. at 642.

As in *Graham* and *Schnurman*, this case involves a case of evenly split residential placement. Consistent with both *Graham* and *Schnurman*, the superior court in this case used the standard support schedule to allocate the support obligation between Erin Zasso and Leticia Lopez, as well as to name Zasso as the support obligor. The trial court's

16

determination of Zasso's support obligation was consistent with the statutory scheme and Washington case law.

Despite these precedents, Erin Zasso argues that he cannot be the obligor because Washington law lacks a procedure for identifying the obligor in equal custody cases. The father in *Schnurman* raised this same argument, claiming that he was not seeking a downward deviation based on residential time. Division One explicitly rejected this argument. *Schnurman*, 178 Wn. App. at 637 n.4.

Erin Zasso contends that the holding of *Schnurman* is inapposite because the father in Schnurman claimed that the support schedules simply did not apply under shared placement circumstances. Zasso distinguishes his argument as one of contending no transfer can be ordered because he is not an obligor. According to Zasso, he does not maintain that the child support schedule does not apply. He simply argues that when two parties share equal visitation, there must be a reasoned basis for ordering one parent to make a support transfer payment to the other. We consider this distinction to lack any legal relevance. Under both situations, the parent seeks to avoid payment of child support because of shared custody. Anyway, the TANF benefits and Zasso's higher income is a reasoned basis for isolating Zasso as the obligor.

Nowhere does the statutory scheme or supporting case law state the parent receiving the support transfer payment must be the parent with whom the child resides a majority of the time. There is also no statutory provision, or case law, which prohibits a

17

transfer payment from the advantaged parent to the disadvantaged parent in an equally shared residential arrangement.

Finally, Erin Zasso relies on *In re Marriage of Holmes*, 128 Wn. App. 727, 117 P.3d 370 (2005) to support his contention that chapter 26.19 RCW does not provide for whether one parent should make a support transfer payment in shared custody cases. The court in *Schnurman* resolved *Holmes'* applicability to cases of shared custody when it stated:

> [R]eliance on *In re Marriage of Holmes*, 128 Wn. App. 727, 117 P.3d 370 (2005), does not compel a different conclusion. *Holmes* did not involve a 50/50 shared residential situation like here. The *Holmes* court simply held that the trial court acted within its discretion in terminating the father's child support obligation. Though the father made significantly more money than the mother, the residential schedule had changed and the son resided a majority of the time with the father.

*Schnurman*, 178 Wn. App. at 642 n.6 (internal citations omitted). Zasso's use of *Holmes* is misplaced.

## CONCLUSION

We affirm the trial court's order compelling Erin Zasso to pay a support transfer payment to the State of Washington by reason of his child's receipt of TANF benefits.

Fearing, J.

WE CONCUR:

Siddoway, C.J.

Brown, J.

18