IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | ) ) ) | No. 34829-6-III |
| MICHELLE MINDERMAN, | ) ) | |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| and | ) ) | |
| SEAN MINDERMAN, | ) ) | |
| Respondent. | ) | |

FEARING, J. — Michelle Minderman appeals numerous decisions and procedures from her marital dissolution trial. We substantially affirm the dissolution court.

## FACTS

Sean and Michelle Minderman married on July 19, 1997 in Spokane. The marriage produced two children, an eight-year-old boy and a thirteen-year-old girl at the time of a January 2016 trial. Sean and Michelle separated on March 28, 2012. We provide the daughter a pseudonym, Mary.

Sean Minderman is a businessman and a professional bass fisherman. Sean competes in four tournaments per year, each which requires a one week excursion. Sean has accumulated over $500,000 in tournament winnings and sponsorships during his career, but, at the time of trial, he no longer garnered a national ranking. Sean also owns an optical business called Frame Factory, Incorporated. Sean's optical company earned $106,936 in 2011, $76,952 in 2012, $106,356 in 2013, and $87,041 in 2014.

Michelle Minderman owns a financial investment firm. She earned a net income of $105,076 in 2012, $148,943 in 2013, and $175,909 in 2014. In 2015, her monthly net income equaled $22,001.86.

PROCEDURE

In March 2012, Michelle Minderman filed this dissolution proceeding. She requested primary custody of the two children with Sean Minderman to enjoy a mid-week overnight visit and every other weekend until Monday morning. Michelle did not then request any visitation restrictions. In May 2012, Sean petitioned for equal custody. In July 2012, Michelle responded to Sean's request by accusing him of reckless driving, intoxication, illicit drug use, viewing pornography, and abuse. Michelle requested that the court restrict Sean's visitation time with the children.

In October 2012, the dissolution court entered a temporary parenting plan wherein the children stayed with Michelle eight overnights and Sean six overnights in a two week period. The court appointed a guardian ad litem, Mary Ronnestad. An arbitrator

resolved the disposition of property and liabilities. The dispute concerning the parenting plan pended for three years. In the interim, the parties abided by the October 2012 temporary parenting plan.

During the pendency of the dissolution proceeding, guardian ad litem Mary Ronnestad periodically spoke with each child, the parents, teachers, and school counselors. Ronnestad reviewed the two children's medical reports. In February 2014, Ronnestad filed a report that noted Mary desired more time with her father. After the filing of the guardian report, Michelle Minderman alleged that Mary was suicidal and that Mary's counselor was ineffective.

After February 2014, Michelle Minderman reported, to Child Protective Services, abuse of Mary by Sean. Michelle claimed that Mary found a dildo in Sean's bathroom, photographed the device, and sent the photo to Michelle. Ronnestad thereafter filed another report that recommended continuation of the October 2012 parenting plan. Michelle called the Kid's Clinic, a pediatric care facility in Spokane, and reported Mary as suicidal.

Trial proceeded in January 2016. Guardian ad litem Mary Ronnestad testified at trial about the significant conflict between the parties and its effect on the children, especially Mary. Ronnestad averred that Mary's psychologist, Lisa Christian, discerned no suicidal behavior in Mary.

Over the objection of Michelle Minderman, social worker Rita Zorrozua testified

at trial. Zorrozua mentioned Richard Gardner's theory of parental alienation and the nuances and levels of "parental alienation syndrome." Report of Proceedings (RP) at 541-46. Zorrozua knew nothing about the Minderman family.

The trial court entertained testimony from the children's assistant school principal, Janet Boyd. Boyd testified that Michelle informed her that Mary struggled to arrive at school on time. Boyd thought this struggle occurred "on mom's time." RP at 9. Boyd averred that she occasionally saw Sean at the school.

Melinda Mertens, Mary's resource math teacher, testified about Mary's grades, reading level, and individualized education plan. According to Mertens, Michelle involved herself more than Sean in Mary's education.

After trial testimony, the dissolution court entered 138 findings of fact, many which document disquieting events about the children. The court found that Michelle Minderman "engaged in a pattern of abusive use of conflict and parental alienation." Clerk's Papers (CP) at 273. Nevertheless, the trial court entered an equal parenting plan with no restrictions on either parent. The court designated Sean the custodian:

> The father is designated the custodian of the children solely for purposes of all other state and federal statutes which require a designation or determination of custody, to include the relocation statute. This designation shall not affect either parent's rights and responsibilities under this parenting plan.

CP at 276.

For purposes of calculating any child support obligation, the trial court found Michelle's monthly net income to be $16,152.00 and Sean's to be $8,119.32. The dissolution court ruled Michelle to be the obligor parent. By using the standard calculation for child support obligations, the court ordered Michelle to monthly pay Sean $957.60 for Mary and $774.73 for their son, for a total of $1,732.33.

During the presentment hearing on March 11, 2016, Michelle Minderman's counsel asked for a deviation on child support:

> MS. BROWN: Your Honor, Mr. Crouse and I discussed perhaps this is better done in a formal Motion for Reconsideration. We're essentially requesting that the Court deviate from the standard calculation because of the shared 50/50 parenting. Certainly that is within the discretion of the Court.
> There are plenty of funds in both households for the children. So the Court is not prohibited from deviating from standard calculations, and the worksheets we submitted yesterday showed the requested deviation based on a 50/50 residential schedule. That is within the Court's discretion.
> I understand from Mr. Crouse that Mr. Minderman would like to respond to that request in a more formal way. If the Court would like to do it that way, we're fine with doing an actual Motion for Reconsideration or we can get a decision today.

RP at 842-43. The dissolution court responded:

> THE COURT: You can do it. Here's the way I look at it, though. When the original I know Mr. Minderman at least from my memory did not file a schedule way back when temporary orders were set up, but way back when three years ago when this was originally set up, Ms. Minderman's income was way different than what she reported to the Court.
> At this time, I'm not going to deviate. If you want to make a formal motion and let them respond, that would give me more time to really think about it because just of[f] the cuff three years of child support he paid to her based on the income they used her worksheets and then it's found out that

those first three years the income didn't match up to what she had indicated in that.

RP at 843.

On March 11, 2016, the dissolution court entered a final order of child support. The court entered, in section 3.8 of the order captioned "**Reasons why Request for Deviation Was Denied**," the language: "Does not apply."  CP at 287.

On March 21, 2016, Michelle Minderman filed a motion for reconsideration of the order of child support.  She argued that good reason existed under RCW 26.19.075 to grant a deviation of $429.83 per month from the standard child support calculation.  On April 27, the dissolution court signed a letter ruling denying the motion for reconsideration.  Michelle filed a second motion to reconsider on May 23, 2016, in which she asked the court to reverse its refusal to award her reimbursement of expenses for the care of Mary.  The trial court also denied this motion.

## LAW AND ANALYSIS

On appeal, Michelle Minderman assigns numerous errors to dissolution proceedings and the trial court's rulings.

*Issue 1: Whether the trial court erred when it allowed Sean Minderman's attorney to ask prejudicial and leading questions?*

*Answer 1: The trial court did not err when allowing leading questions, but, assuming any error, Michelle Minderman establishes no prejudice.*

Michelle Minderman contends that Sean's counsel, during direct trial examinations, improperly led Sean's testimony and the testimony of Sean's expert, Rita Zorrozua, which questioning resulted in detriment to Michelle. Michelle cites forty-six of the one hundred and thirty-eight findings of fact that she contends contain judicial opinions and inappropriate comments unfairly highly critical of Michelle's parenting. She maintains that these findings illustrate the taint resulting from the leading questions of Sean's counsel. Sean argues the trial court did not err because any leading questions did not prejudice Michelle.

Michelle Minderman provides few examples of purported leading questions by Sean's counsel during direct examination of Sean and Rita Zorrozua. In the first example, Sean's attorney directed Sean to look at an exhibit and asked: "Looking at the declaration, and you can look at Page 1. Is that what you represented to the Court under oath had occurred at the bottom of Page 1 under your declaration?" RP at 141. Michelle's counsel interposed no objection.

Sean Minderman's trial attorney showed Rita Zorrozua an example of Michelle's temporary declarations and inquired:

> Q [Sean's Attorney:] And then if you look at line 8, the mother makes a statement that since the children were born, Sean has only been active in their life as he desires?
> A [Zorrozua:] Yes.
> Q [Sean's Attorney]: If you look at line 45 through 50, you'll see then the allegation, over the past two years Sean has been removed from the children's life as his optical business with the subjective audited by

7

> Premera. This audit has caused an extreme amount of stress on Sean and the family including the children. This audit has caused already high level of anxiety to amp up, as well as cause him to be more withdrawn, depressed, erratic, irrational and angry towards the children, and on the next page, it continues.
>
> He has spent several nights out gambling and drinking with his friends in order to help him cope with his overall overly stressful audit situation?

RP at 565. Michelle's trial counsel immediately asked: "Your Honor, is there a question in all of this?" RP at 565. Sean's counsel responded that he was laying a foundation for later questions. Michelle's attorney objected and asked for a continuing objection "on questions of this sort." RP at 566. The trial court did not sustain the objection and instructed Sean's counsel to "stick to hypothetical versus declaration." RP at 566. Michelle's counsel again asked the court for a continuing objection to those types of questions. Zorrozua's testimony continued.

ER 611(c) provides that leading questions should not be used in direct examination of a witness "except as may be necessary to develop the witness' testimony." The trial court has wide discretion to permit leading questions and will not be reversed absent abuse of that discretion. *State v. Delarosa-Flores*, 59 Wn. App. 514, 517, 799 P.2d 736 (1990).

Case law reveals that this court rarely proclaims reversible error because of the asking of leading questions. In *State v. Torres*, 16 Wn. App. 254, 554 P.2d 1069 (1976), the prosecutor continuously, intentionally, and consistently asked leading questions to the

8

end that the court found the prosecutor contemptuous. The State's attorney also referred to the accused with racial references. The prosecutor repeatedly mentioned the defendants' refusal to testify during trial. This court held that "[w]hile the asking of leading questions is not prejudicial error in most instances, the persistent pursuit of such a course of action is a factor to be added in the balance." *State v. Torres*, 16 Wn. App. at 258. This court granted a new trial only because of the combined error of violating the privilege against self-incrimination and the racial references. *State v. Torres*, 16 Wn. App. at 264-65. *Torres* inferentially suggests that repeated use of leading questions, which even lead to a finding of contempt, do not suffice for reversible error.

Michelle Minderman argues that the findings of fact reveal the net effect of the leading questions resulting in the dissolution court reaching the conclusion that Michelle alienated her children from their father. We disagree. Sean's trial counsel asked few leading questions and the questions functioned to set a foundation for other testimony. The dissolution court heard substantial evidence from witnesses, other than Sean and Rita Zorrozua, of Michelle's alienating behavior. Guardian ad litem Mary spoke of a pattern of questionable allegations asserted by Michelle regarding Mary's change of behavior. Michelle alleged that Sean exposed Mary to a dildo, that Mary was suicidal, and that her counselor was no longer a good fit for her. Michelle reported to Child Protective Services that Sean abused the children. The dissolution court relied extensively on the guardian ad litem's report and testimony in the court's findings.

*Issue 2: Whether the trial court erred by providing Sean Minderman's attorney with legal advice on how leading questions could be admissible?*

*Answer 2: Since Michelle fails to forward law to support her contention that the trial court erred by supplying legal advice, we decline to review this assignment of error.*

Michelle Minderman also contends that the trial court erred when advising Sean's attorney on how to gain admission of his leading questions. Nevertheless, Michelle provides no argument or citation to authority related to this assigned error. This court does not review errors alleged, but not argued, briefed, or supported with citation to authority. RAP 10.3; *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968). Thus, we decline to address the assignment of error.

*Issue 3: Whether the trial court erred when entering findings of fact that included prejudicial dicta comments, hearsay statements, and opinions not factual in nature?*

*Answer 3: We decline to address this assignment of error because Michelle Minderman fails to assign error to discrete findings.*

The trial court entered 138 findings of fact and seven conclusions of law. Michelle Minderman complains that over fifty findings constitute opinions, incomplete sentences, dicta, prejudicial comments, hearsay, or inappropriate references to temporary orders. She argues that this court should, at the least, remand for entry of suitable findings, or, at most, grant a new trial. We decline to address this assignment of error.

RAP 10.3 provides, in part:

> (g) **Special Provision for Assignments of Error**. . . . A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

Michelle Minderman failed to comply with RAP 10.3(g). Michelle Minderman's assignment of error 3 reads:

> By entering Findings of Fact that included a significant number of prejudicial dicta comments, hearsay statements, and opinions that were not factual in nature.

Opening Br. of Appellant at 5. Minderman does not number any of the alleged inappropriate findings.

*Issue 4: Whether the trial court erred when it referenced the parties' temporary parenting orders as proof that a final shared parenting plan would be appropriate in violation of the* Kovacs *case.*

*Answer 4: No. The trial court did not rely on the temporary plan for the basis of the final plan.*

Michelle Minderman observes that the trial court's findings of fact six to eighteen reference the parties' successful performance under the temporary parenting plan, and, thus, the findings imply that the court should enter a final plan of equal residential time based on the temporary plan. She contends use of the temporary plan as a precedent

violated the rule promulgated in *In re Marriage of Kovacs*, 121 Wn.2d 795, 854 P.2d 629

(1993), that a trial court cannot reference temporary plans when ordering final plans after

trial.

Findings of fact six through eighteen declare:

6. In March of 2012, this case was filed by [Michelle] and she requested at that time primary custody with the standard parenting plan for Mr. Minderman to have a mid week overnight visit and every other weekend until Monday morning.

7. At that time, she did not request any restrictions, and there was nothing in the request that would signify to the Court there were any huge issues with Mr. Minderman's parenting.

8. However, in May of 2012, Mr. Minderman requested a 50/50 parenting plan where the parties would then share custody, indicating that the parties had been doing this since separation.

9. In July of 2012, [Michelle] then filed a response to his request and accused him of reckless driving, drinking, drug use, pornography and abuse which included a domestic violence arrest in 2005 which was apparently dropped.

10. She asked the Court to restrict his time with the children because of these huge issues.

11. In October of 2012, the Court set up the current parenting plan where the mother had 8 overnights and the father had 6 overnights in a two week period, and the Court also appointed a Guardian ad Litem.

12. In setting up this 8/6 plan, the Court didn't make any findings that Mr. Minderman had any of the issues that would concern the Court or limit his time with the children.

13. Though [Michelle] tried to get the Court to reconsider this parenting plan many times, the Court did not find her claims reliable considering her earlier request for a normal parenting plan.

14. During the three years that this case has churned through the court system and the various judicial officers, the parties continued their 8/6 plan with a 50/50 plan during the summer.

15. There was no change in the last three years though the parties filed numerous continuances in the matter, some because of changes of

12

counsel and many because the Guardian ad Litem had to investigate different issues that popped up throughout the case.

16. There were several motions filed by [Michelle] asking to restrict Mr. Minderman's time with the children though none were successful.

17. Mr. Minderman made several motions that the Court found to have merit, including the fact that [Michelle] would not allow the kids to have phone contact with him, and the Court Commissioner had to intervene and order phone contact.

18. The Commissioner did note that Mr. Minderman did not retaliate when he had the children, but would allow phone contact with their mother during this time.

CP at 296-97.

According to *Kovacs*, the trial court may not draw presumptions from a temporary parenting plan when entering a permanent parenting plan. *In re Marriage of Kovacs*, 121 Wn.2d at 809 (1993). Nevertheless, the decision does not preclude the dissolution court from references to the temporary plan in findings of fact.

Michelle Minderman relies on *In re Marriage of Combs*, 105 Wn. App. 168, 19 P.3d 469 (2001), wherein this court applied the *Kovacs'* rule. In *Combs*, the court believed both parents were equally qualified to be the permanent primary residential parent. The court then broke the "tie" by relying on the fact that the mother had performed well as the primary residential parent during the temporary plan. This court concluded that the court abused its discretion by designating the mother the permanent primary parent based on her success as the temporary primary parent.

The Minderman dissolution court merely referenced that Michelle and Sean operated under a temporary parenting plan for three years. The trial court did not opine

that the parties operated a temporary 8/6 parenting plan with success. The court relied on no presumption in favor of continuing with the temporary plan. The dissolution court relied on substantial evidence that equal residential time served the best interests of the children. Therefore, the court did not abuse its discretion when entering the final parenting plan.

*Issue 5: Whether the trial court erred by approving a child support worksheet that failed to show how Michelle's net income was determined?*

*Answer 5: No.*

RCW 26.19.035(3) requires that the parties complete child support worksheets in every dissolution proceeding in which the court awards child support. The statute affords no exceptions. *In re Marriage of Sievers*, 78 Wn. App. 287, 305, 897 P.2d 388 (1995). Data contained in the child support worksheet constitutes findings of fact for the child support order. *In re Marriage of Daubert*, 124 Wn. App. 483, 492, 99 P.3d 401 (2004), *abrogated on other grounds by In re Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007).

We rarely reverse child support awards. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). The spouse who challenges an award must show that the trial court manifestly abused its discretion. *In re Marriage of Griffin*, 114 Wn.2d at 776. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *In re Marriage of Kovacs*, 121 Wn.2d at 801 (1993). A court's

14

decision is based on untenable grounds if the factual findings are unsupported by the record. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). Appellate courts review factual findings for substantial evidence and for legal error. *In re Parentage of O.A.J.*, 190 Wn. App. 826, 830-31, 363 P.3d 1 (2015).

Michelle Minderman contends that the final child support decision rested on a child support worksheet prepared by Sean's attorney, which worksheet did not explain how he arrived at Michelle's net income. In turn, Michelle contends the dissolution court committed error by failing to explicate the basis of her $16,152 monthly net income figure.

Although Michelle Minderman posits the inadequacy of the child support worksheet, the underlying issue becomes whether substantial evidence supports the trial court's child support order. We find sufficient evidence. The dissolution court reviewed multiple income tax statements of both parties. On this evidence, the court adopted, but incidentally changed, the worksheets that Sean presented. The trial court, based on Michelle's returns, averaged her income from her wealth management business over a three year period. The court found that Michelle's monthly net income, based on a three year average, was $16,152 at the time of trial. Substantial evidence supported this finding.

Michelle also argues that the court should have included all of her business taxes, unemployment taxes, social security taxes, and labor and industry taxes flowing from her

investment firm business. According to Michelle, such an exercise would have lowered

her income and support obligation. We reject this contention because Michelle provided

a net monthly income of $16,152 on her own worksheet. To the extent that the trial court

erred, Michelle invited the error. *In re Marriage of Morris*, 176 Wn. App. 893, 900, 309

P.3d 767 (2013).

*Issue 6: Whether the trial court erred when it entered a child support order that failed to recognize that Michelle Minderman asked for a deviation from the standard calculation because of the equal residential schedule and failed to enter findings as to why it denied the request?*

*Answer 6: We remand for the trial court to enter findings of fact in response to Michelle Minderman's deviation request.*

Michelle Minderman next complains that the trial court entered no finding of fact

in response to her deviation request as demanded by *In re Parentage of A.L.*, 185 Wn.

App. 225, 340 P.3d 260 (2014). Sean does not contend that Michelle failed to timely

request a deviation.

According to *In re Parentage of A.L.*, the dissolution court determines the standard

calculation of child support and nominates the obligor, after which the court, if requested,

considers whether to deviate from the standard calculation. The dissolution court must

perform a statutory analysis, under RCW 26.19.075(1)(d), if the court considers a

deviation based on residential schedule.

If the court considers a deviation based on residential schedule, it must follow a specific statutory analysis:

The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.

*In re Parentage of A.L.*, 185 Wn. App. at 237; RCW 26.19.075(1)(d). The trial court must enter written findings of fact supporting the reasons for any deviation or denial of a party's request for deviation. RCW 26.19.075(3); *In re Parentage of A.L.*, 185 Wn. App. at 237.

The Minderman dissolution court entered no finding of fact on its refusal to deviate from the child support schedule. The court instead entered "Does not apply" and directed Michelle to present a formal motion if she wished. Both Sean and Michelle later moved the court for reconsideration. Michelle asked the court to find good cause to grant her request for a deviation from the standard calculation. The trial court entered a written ruling denying the motion for reconsideration for child support by either party. The court, however, did not

directly respond to the request for a deviation. Therefore, we remand to the dissolution court to enter one or more findings of fact in response to the entreaty.

*Issue 7: Whether the trial court erred by entering a parenting plan without indicating the plan served the children's best interests?*

*Answer 7: We decline to address this assignment of error.*

Michelle Minderman argues the trial court erred by entering a parenting plan without any substantive conclusions of law and without indicating the plan served the children's best interests. Nevertheless, in her opening brief, Michelle does not address this assignment of error. She provides no argument or citation to authority related to this assignment. This court does not review errors alleged but not argued, briefed, or supported with citation to authority. RAP 10.3; *Valente v. Bailey*, 74 Wn.2d at 858 (1968).

*Issue 8: Whether the trial court erred by declaring Sean Minderman the primary custodian when granting the parties equal residential time?*

*Answer 8: We decline to address this assignment of error.*

Michelle Minderman next argues that the trial court erred by entering a parenting plan that declared Sean as the primary parent with the greatest amount of parenting time, even though the plan ordered exactly equal time for both parents. Nevertheless, in her opening brief, Michelle does not address this assignment of error. She provides no argument or citation to authority related to this assignment. This court does not review

errors alleged but not argued, briefed, or supported with citation to authority. RAP 10.3; *Valente v. Bailey*, 74 Wn.2d at 858.

*Issue 9: Whether we should remand to a new trial judge?*

*Answer 9: No.*

Finally, Michelle asks that we require a new judge to preside on remand due to the prejudicial comments toward Michelle in the court's findings. We deny the request. To the extent the court entered prejudicial comments in findings of fact, sufficient evidence supported the comments. Our order of remand pertains only to a narrow issue, on which the court already ruled.

*Issue 10: Whether this court should award Sean Minderman reasonable attorney fees and costs incurred on appeal?*

*Answer 10: No.*

RCW 26.09.140 allows this court to award a party attorney fees and costs against the other party in a martial dissolution appeal. In awarding attorney fees on appeal, the court examines the merits of the issues on appeal and the financial resources of the respective parties. *In re Marriage of Griffin*, 114 Wn. 2d at 779-80 (1990). Sean Minderman asks for an award.

We deny Sean Minderman's request for an award of attorney fees. The dissolution court awarded Sean substantial property. Sean received the family home valued at $450,000, Hauser Lake property valued at $165,000, an Arizona parcel valued

at $196,000, and his Frame Factory business valued at $284,000. He holds substantial assets to pay fees. *See In re Marriage of Griswold*, 112 Wn. App. 333, 353, 48 P.3d 1018 (2002).

## CONCLUSION

We affirm all rulings of the trial court except the court's refusal to grant a child support deviation. Without directing the court how to rule, we remand for the dissolution court to enter one or more findings of fact in response to Michelle Minderman's request for the deviation. We deny Sean Minderman an award of reasonable attorney fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

20